Cheves, J.
delivered the opinion of the Court.
In this case a new trial is moved for, on the following grounds:
1. That defendant produced no original grant to the land in dispute, nor any evidence of title or possession to authorize a presumption that a grant once existed.
2. That if a grant ever existed, the locus in quo was not proved.
3. That the presiding Judge misdirected the Jury, in charging them that they might consider the possession of the plaintiff as that of the defendant’s lessor, if they considered the plaintiff as the agent of the latter.
I have striven very hard to sustain the verdict in this case; I am satisfied that the claim of the plaintiff is one entitled to no favour. To say the least, I ám satisfied he came to a knowledge of the defect in H&rfs title, if it he defective, while acting as his agent; that his knowledge of that fact induced him to take out the grant on which *88 he relies, and that he studiously concealed this act from' his principal. But we are not the dispensers of favours; it is our duty to administer the laws, and, however as men and as Judges we may disapprove this breach of confidence in the plaintiff if it do no,t legally invalidate his claim, we must adjudge it to him.
The record of an old survey, though certified by the Surveyor General of that day, without any grant produced, will not warrant the Court to presume a grant, unless proof be given of the public offices being searched, the loss of those original records by stime 4>r accident, &c.
1. The first question is, did the evidence support the verdict as to title ? The plaintiff produced an original grant from the state to himself. This entitled him to a verdict, unless a better title was established in some other person. Did, the defendant prove a better title in his lessor ? He produced no original grant; the only evidence which had any bearing of that kind, was the record of survey, certified by the Surveyor General; and this afforded conclusive moral evidence of the existence of an older grant than the plaintiff’s. But was it legal evidence to prove title in the defendant’s lessor ? There was not a tittle of evidence, written or unwritten, to show that. those under whom the defendant claimed ever pretended to hold under this grant. There was nothing to connect their possession with this grant. But if their possession had been connected with it, was this record of survey sufficient, under the circumstances of this case, to authorize the Court to presume the existence of the grant to which it refers ? I think not: this document proves the existence of better evidence, and points to the records of the land office *89 as the place where that evidence may be found. Until some evidence is given, that by time and ° , J , accident, or other cause, that evidence which at one time existed has perished, the Court is not at liberty to presume what it seems probable may be proved. If it should appear that no record of such grant exists, considering that the records of the country have been exposed to the accidents and ravages of a civil war, and many other casualties of time and accident, I should deem the document produced sufficient evidence of the existence of the grant it recites, and presume that it had perished by time and accident. If we are not at liberty to presume the existence of a grant to support the title of the defendant, we are less at liberty to presume the same fact without reference to any title at all. There is then no evidence of an original grant in any peison which can defeat the grant of the plaintiff, and the question turns entirely on possession. It is true, a grant is necessary to * # support a title by possession, but 1 think for this purpose the grant to the plaintiff is quite sufficient, and will support either his own possession, or the possession of the defendant’s lessor. I think, too, that the charge of the presiding Judge was correct, that the possession of the plaintiff acting as the agent of Hort, was the possession of the latter. The evidence in the case established clearly, I think, such a possession as gave the person entitled to the benefit of it, a le *90 title to some part of - the land '-’in question. The proof, however, appears to have estáblished the actual possession of but a small part; and we are brought to a question which has long agitated, and continues to agitate, our land law. ft is much to be regretted that the' law on this subject, which ought to be more certain and settled than on any other, should have long been, as I believe it has, scarcely understood either the bar or bench.. In a late case, (Reid vs. Eifert,) decided in the Constitutional Court at Columbia, the whole subject was under consideration, and that Court settled, and I hope ixnmoveably settled, the following points :
grant is n&* «tie8 by SgSthesute”
decided in this pSssfen Dtm possession1 ofpart d'ume,vidcompi'cquaMity claimed.-
1. That naked possession will give title.
2. That actual possession of a part shall, under certain evidence of claim, be considered a legal possession of the whole quantity claimed ; but it remains undetermined what that evidence shall be. On that question, the several members - of the Court, I understand, held very different opinions, which they have declared in the case I have just mentioned. I have not had the happiness to see these opinions, though I have been informed by my brethren of their substance. On the point which remains unsettled, I am obliged to declare my opinion, in order to decide for myself- this case, and on the other points I think it my duty to use the occasion to declare my concurrence, in order to -give any support in my power to the stability of the law on this impor *91 tant subject. This I should do, for this-reason, if I had thought these points erroneously deter- ... * mined; but I Have the comfort.to. believe that they were correctly determined.
1. I think naked possession under .our .act of assembly gives title. By title, I mean the .right. to hold, recover, transmit, and convey for ever the possession and use of the land; and I am to. be understood only to speak of land which has been granted by the sovereign authority. The act enables the occupant for five years, with the exceptions which it contains,. to resist and maintain a possessory action, the only action that can be maintained in this State, Avhich is a perfect title, to all useful and rátional purposes. . This opinion is supported by the analogy .of the English cases. The pro- , spective clauses of our act of assembly, (and we speak of them,) are, in effect, precisely the. same as the prospective clauses of the statute, of 21 Ja. 1. c.16. Both take away the remedy of the claimant out of possession, without expressly. conferring title on the occupant. Yet, under the. English statute, the Courts'do not require, any accompanying title, to give effect to possession. 1 Ld. Ray. 741. Ballantine on Lim. 23. Indeed, the very case of a Squatter is stated, and said to be allowed by all the Judges. The case.is, If a cottage is built in defiance of the lord, and quiet possession has been had for 20 years,-it is within the statute.” Ballantine, 26. Buller's N. *92 P. 103. By defiance is meant, of course, a possession unequivocally adverse. The doctrine of colour of title, as a necessary foundation of acts of limitation, is only to be found in the American decisions, in which it has been sometimes rather capriciously adopted, and almost always drawn from the peculiar phraseology of the particular act under consideration. In our act of limitation, there is nothing requiring or authorizing it. Two other acts of assembly have sometimes been relied upon to support a different construction: one, “ An act for the remission of arrears of quit rents, registering patents, &c.” Pub. Laws, 130. The other, “ An act to restrain particular persons, therein described, from obtaining grants of land, &c.” Pub. Laws, 427, 428. But if these acts be examined, they will be found, as far as they can relate to this question, to be intended merely to supply the place of original grants. The first act expressly saves the rights of all persons, and though the latter says that five years actual possession before the 4th July, 1770, shallbe deemed a good title; from which it is inferred, that under the act of limitations, possession merely does not give title; yet the terms of the clause and the tenor and object of the whole act, show clearly that the intention of the legislature was merely to supply the place of original grants, many of which had been lost during the war of the revolution. This doctrine of colour of title seems by those who use it, to be very badly defined. *93 Surely the jargon of the old pleadings has nothing to do with it, and to resort to it is only to encumber the subject. I understand by colour of title, any written muniment, purporting to'vest title in the person claiming. I say written, for although I think a descent, cast, and the like, will equally, in an abstract sense, constitute colour of title; it is not used in this sense by those who introduce it. If this be a correct idea of colour of title, and it be a necessary basis of the act, the following consequences may be inferred: If A had quietly enjoyed Black Acre for five years under a naked possession, and died, leaving it to descend to his heir, though the heir should occupy it for five subsequent years, yet his possession would not be within the statute. But if he had possessed it but for one hour, or had not possessed it all, and had devised or conveyed it by deed to the person who became his heir, the case of the latter would be within the statute. Again, if A had occupied Black Acre for fifty years, his case would not be within the statute. But if he had, with an instant’s possession, or without it, conveyed it to B, and the latter had occupied it for five years, his case would be within the statute. But upon principle, legal, moral, or political, why should the superadded writing make any difference in these cases, as the foundation of title ? The effect of colour of title, as before defined in establishing limits, defining the subject claimed, and in fixing the extent of the legal, as conse *94 quént on the actual possession, is a different thing, which we will presently consider. A naked possession, I then conclude, gives title; and this, Í believe, has been the invariable construction of our Courts, from the passing of the act to this day.
2. Actual possession of a part shall, under certain evidence of claim, be considered a legal possession of the whole quantity claimed. It is very evident, that in the state of the country when the act of limitations was passed, when very little of it was settled, when the grants were large, when titles were recent, and could more easily be deduced and established, the act would have fallen very far short of its declared intent, if it had been confined in its operation to actual possession. One is obliged to believe that it was as much the object of the act to prevent encroachments upon- large tracts, which were but partially cultivated, as to protect the spot which the proprietor cultivated and lived upon. A different construction might suit China, but in this country, at the time the act was passed, at present, and at every intermediate period, this construction has been necessary to secure the titles of the inhabitants; and is more necessary at this period than at any other time. At this time, the instances in which an unbroken chain of title, from an original grant down to the present possessor, can be made out, are very few; and unless the operation of the act be ex *95 tended beyond actual possession, there are few landholders in the country who could resist the in- " ^ trusión ofaningenious and unprincipled trespasser. Such a trespasser may enter upon uncultivated parts of their lands, and bid them, and all the Courts of the country, defiance. There will be no mean of ejecting him but by proving a perfect title, unless the spot has been actually occupied. Every practitioner must feel the force of this remark. It appears to me there is a great misapprehension on this subject. It is supposed this construction exposes the landholders of the country to the intrusion of the people commonly called squatters. But the very reverse of this is the fact. It may expose lands whose owners have abandoned or entirely neglected them. But it is essential to the security of the titles of all the valuable settled lands of the country. Without it, in a country like this, where a perfect title can so seldom be proved, and where enclosures are only used for cultivation, trespassers might come up to the very threshold of the proprietor, and he would be without remedy. It is necessary to extend the rights of possession beyond the actual possession ; and why should you stop short of the quantity claimed, if the limits of it be sufficiently established? It seems to me that the nature of the thing and the object of the act, require us to go thus far. I believe this had béen the construction of the Courts, and the understanding of the country, for almost á century, until a different construction was suddenly adopted *96 in Jones vs. Smith, and Gourdine vs. Theus. The rule there adopted one would be inclined to characterise as fanciful, if it were not worse. It of necessity brought every case into Court, for no Judge or lawyer in the land could form a reasonable conjecture as to the legal limits of a title by possession. The oracle could only be pronounced on the tripod. It was necessary to be sworn of the Jury, to know where the limits of your neighbour’s land lay, whether it consisted of 500 or 1000 acres, or whether it lay to the right or the left, or in the centre of a given locus. I consider the Court in Reid vs. Eifert as having gone back to what had been long the established law of the state, and I with great pleasure go back with them.
smith^Gmardine "v. Theus.
What evidence mus shaii bfsufed*
3- ®ut ^ great difficulty remains, and it was probably this which drove the Court to the adoption of the rule in Jones vs. Smith, and Gourdine vs. Theus; what evidence of claim and limits shall be deemed sufficient ? And here I think the very terms of the question suggest the best solution of it. It is a question of evidence; the evidence must be sufficient. In this, as in other cases, there are circumstances, which, if multiplied to infinity, would not in themselves be sufficient, though they may sometimes be deemed slight auxiliaries; as, for example, grazing cattle on the locus in quo. There are others which must be conclusive, as enclosure. There are others less conclusive, jet sufficient, as a junior grant *97 or bona fide conveyance; as old, however, as the possession relied upon. It would- be vain, and it would be dangerous, m any one judgment to attempt to establish a rule for all cases — it haps cannot be done in a thousand, if the Court possessed legislative power, and could enact their decision as a statute, it could not be wisely done at any given moment; it must be done by successive decisions. It is, and ought to remain, a question of evidence; and no two cases probably can be found exactly alike. Some leading rules may be suggested, and they will be established or repudiated by successive decisions. Thus 1 am of opinion, 1. That in all cases the extent of the claim ought to be established unequivocally, and ought to have been uniform for the period required by the act to give title. 2. That naked possession should carry with it only the spot occupied, (an extreme case may occur, but it should be treated as an exception,) and superadded enclosures. 3. That actual possession of a part, under or with unequivocal reference to a colourable title in writing, (defining this title as already mentioned,) or a survey made by public authority, should establish a legal possession co-extensive with the claim of title. 4. That actual possession of a part of a tract of land, well defined by use, or obvious and well known boundaries, shall be co-extensive with the limits of such boundaries. For example •, if A has held quiet possess *98 sion of Black Acre, whose boundaries have beers - well. established; has cultivated the principal fields, and occupied the mansion, &e. &c. this - possession, without any immediate conveyance to A, should give him a title to the whole tract, though he should'not have actually used or possessed more than a third or a fourth of it. But if A build a cabin on a remote corner of this tract, he does not by that manifest a title to Black Acre, but only to the spot on which it stands. Soii Black Acre and White Acre adjoin, and A, having an unequivocal right to Black Acre, occupy a small part (near their reciprocal boundaries) of White Acre, under circumstances which leave it doubtful whether he claim it as a part of Black Acre or a part of White Acre, this will not give him a claim to more than he actually covers by his possession. These are merely examples put by way of illustration, and the question will always occur whether the party claiming held with reference to limits and boundaries sufficiently established. , Sometimes questions of difficulty will occur; but they will be of the same nature, and not more difficult than other questions of possession, of personal identity, and identity of property, which occur daily in our Courts. Time and successive determinations will give all the precision and certainty to the subject of which it is susceptible. To add an example which the case before us furnishes, I am of opinion, that if it had been proved that *99 the defendant’s lessor had unequivocally claimed under the record of survey which he gave in evidence, it would have established his title by possession to the whole of that survey. But on the contrary, it does not clearly appear that he did not claim it as a part of the adjoining tract, to which his title is unequivocal.
Richardson for the motion.
K. L. Simons, contra.
2. As to the locus in quo, we are all very clear that was sufficiently proved. The face of the papers leaves no doubt on the subject, and we would rely with confidence, had we any doubt, on the verdict of a Jury of the vicinage, or the agreement of the adverse surveyors.
3. On the charge of the Judge, I have already declared my opinion; it was perfectly correct. On the first ground, therefore, I am of opinion that a new trial ought to be granted, and that is the unanimous opinion of the Court.